UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                           :

UNITED STATES OF AMERICA,       :

                           :

         v.                :      **MEMORANDUM & ORDER**

                           :      23-CR-432 (WFK)

KATHERINE QUINTERO DAZA,   :

                           :

            Defendant.    :

-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On August 16, 2024, Defendant pled guilty to one count of conspiracy to commit interstate transportation of stolen property, in violation of 18 U.S.C. § 371, which was charged under a four-count Indictment. Plea Agreement ("Plea"), ECF No. 48 at ¶ 1; *see generally* Third Superseding Indictment (the "Indictment"), ECF No. 24.[1] The Court now sentences Defendant and provides a complete statement of reasons, under 18 U.S.C. § 3553(c), of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to forty-six (46) months' imprisonment; two (2) years of supervised release with both the standard and special conditions of supervision; restitution in the amount of $5,289,578.00, plus interest, as set forth in the forthcoming Order of Restitution; forfeiture of items identified in the Order of Forfeiture, ECF No. 62; and a $100.00 mandatory special assessment.

    **I.**      **Background**

    *Factual Background*

       From August 2022 through August 2023, Defendants engaged in multiple thefts and

attempted thefts across the United States, during which they stole jewelry, watches, antique

coins, and sums of United States currency. Sealed Presentence Investigation Report ("PSR"),

ECF No. 103 at ¶¶ 4–22; Government Sentencing Memorandum ("Gov't Sent'g Mem."), ECF

No. 118 at 1. To carry out these thefts, Defendants employed coordinated distractions,

---

[1] Citations are to the docket in *United States v. Daza, et al.*, 23-CR-432. Pincites refer to the ECF page numbers assigned to a filing, where available, and where no ECF heading is present, to the page numbers listed in the original filing.

surveillance of potential targets and/or individual victims, disguises, aliases, and transportation of stolen property across state lines.[2] PSR at ¶ 4.

The parties agree Defendant was involved in seven (7) thefts and two (2) attempted thefts. *See id.* at ¶¶ 9–11, 13–18, 22.[3]

On August 15, 2022, Defendants entered a jewelry convention in Chicago, Illinois, and stole items collectively valued at $385,900.00. *Id.* at ¶ 9; Gov't Sent'g Mem. at 2. Video surveillance showed Defendant, co-defendant John Arenas Polo ("Polo"), and co-defendant Angel Betancur-Lopez ("Betancur-Lopez") pushing a cart containing jewelry out of the convention while co-defendant Carlos Alberto Manrique Ducuara ("Ducuara" together with Defendant, Betancur-Lopez, and Polo, "Defendants"), distracted the jewelry vendor. PSR at ¶ 9. Defendants stole twenty-three (23) Rolex watches and numerous antique coins. *Id.*

On October 22, 2022, Defendants entered a jewelry exposition at the Javits Center in New York, New York, and stole jewelry valued at $418,778.00 from two (2) vending booths. *Id.* at ¶¶ 10–11; Gov't Sen'g Mem. at 2. Video surveillance showed Defendant engaging a jeweler/vendor in conversation while Ducuara entered the jeweler/vendor's booth and removed a black case labeled "Diamond." PSR at ¶ 10. Ducuara subsequently placed the case in Polo's backpack, who then left the exposition. *Id.* Later that day, video surveillance captured

---

[2] Defendants utilized various aliases to shield their true identities. This Defendant is otherwise known as "Jessica Marlen Salazar" and "Catalina Aponte Garcia;" Ducuara as "Mauricio Moreno," "Miguel Angel Conde Lucas," "Mario Moncaleano Moreno" and "Alberto Piedra Encarnacion;" Polo as "Jairo Antonio Garzon Castaneda;" and Betancur-Lopez as "David Gamboa."

[3] The Court counted eight (8) thefts and two (2) attempted thefts: one theft on August 15, 2022 in Chicago, Illinois; two thefts on October 22, 2022 in New York, New York; one theft on January 12, 2023 in New York, New York; one theft on February 7, 2023 in Jamaica, New York; one theft on February 14, 2023 in West Palm Beach, Florida; one theft on February 17, 2023 in Miami, Florida; one theft on August 18, 2023 in Edison, New Jersey; one attempted theft on March 10, 2023 in Atlanta, Georgia; and one attempted theft on April 12, 2023 in Bayside, New York. PSR at ¶¶ 9–11, 13–18, 22. In any event, the Guidelines range remains the same.

Defendant at a different booth, where she engaged a different jeweler/vendor in conversation. *Id.* at ¶ 11. While Defendant distracted the jeweler/vendor, Ducuara stole a case of jewelry from the booth and placed it in a garbage bin. *Id.* Betancur-Lopez, who was wearing a yellow safety vest and posing as an employee of the Javits Center, wheeled the garbage bin containing the discarded case toward a loading dock with Ducuara's assistance. *Id.*

On January 12, 2023, Defendants entered a coin exposition show at the InterContinental New York Barclay Hotel in New York, New York, and stole coins valued at $400,000.00. *Id.* at ¶ 13; Gov't Sent'g Mem. at 2. Video surveillance captured Bentancur-Lopez engaging a security guard in conversation, while Defendant and Polo distracted nearby individuals. PSR at ¶ 13. Ducuara subsequently opened a display case, placed various coins into a roller bag, and left the scene. *Id.*

On February 7, 2023, Defendant, Ducuara, and Polo stole jewelry valued at $236,000.00 from an individual leaving the Diamond District in New York, New York. *Id.* at ¶ 14; Gov't Sent'g Mem. at 2. As the victim entered a taxicab, Ducuara punctured the taxi's rear tire. PSR at ¶ 14. The driver subsequently pulled over due to the flat tire and opened the taxi's trunk, allowing the victim to remove his belongings. *Id.* Ducuara dropped money on the ground to distract the victim, while Defendant approached and distracted the taxi driver. *Id.* Polo then reached into the trunk of the taxicab and removed a case of jewelry the victim had placed in the trunk. *Id.*

On February 14, 2023, Defendant, Ducuara, and Polo posed as employees of the Palm Beach County Convention Center in West Palm Beach, Florida, and stole jewelry from an exposition valued at approximately $3,687,900.00. *Id.* at ¶ 15; Gov't Sent'g Mem. at 2. The exact number of vendors stolen from is unknown. PSR at ¶ 15.

On February 17, 2023, Defendant, Ducuara, and Polo approached a vendor booth at the International Jewelers Exchange in Miami, Florida, and stole watches valued at $140,000.00. *Id.* at ¶ 16; Gov't Sent'g Mem. at 2. Video surveillance showed Defendant engaging a jeweler/vendor in conversation while Ducuara reached into a display counter to take a rack of watches. PSR at ¶ 16. Polo distracted other individuals nearby while Ducuara placed the rack of watches in a shopping bag and left the scene. *Id.*

On March 10, 2023, Defendant, Ducuara and Polo attended the Atlanta Jewelry Show at the Cobb County Convention Center in Atlanta, Georgia. *Id.* at ¶ 17. Prior to the jewelry show, local law enforcement circulated images of Defendants to jewelry store owners and the operators of the convention. *Id.* Ducuara entered the convention, while Defendant was "actively trying to enter" and Polo was "outside in a vehicle, acting as a getaway driver." *Id.* Law enforcement recognized and stopped Ducuara. *Id.* Probation and the Government characterize this as attempted theft. *See id.*; Gov't Sent'g Mem. at 2.

On April 12, 2023, Defendant and Polo attempted to take a watch from an individual in Bayside, New York. PSR at ¶ 18. Defendant and Polo tried to distract the individual as he entered his vehicle but were unsuccessful in their effort. *Id.*[4]

On August 18, 2023, video surveillance captured Defendant, Polo, and two (2) unidentified co-conspirators observing a couple as they withdrew $5,000 from a bank in Edison, New Jersey. *Id.* at ¶ 22. Defendant, Polo, and the co-conspirators subsequently followed the

---

[4] Although the Government's sentencing memorandum does not explicitly reference this attempted theft, it notes "[t]he facts underlying the offense conduct in this case are accurately set forth" in the PSR. Gov't Sent'g Mem. at 1. Defendant did not object to the inclusion of this event in the PSR. *See* Defs. Obj. to PSR.

couple to a nearby store, where one unidentified co-conspirator attempted to distract the couple while Defendant and Polo waited in the car. *Id.* The second unidentified co-conspirator reached into the couple's car and stole a bank envelope containing $2,000.00 in United States currency. *Id.*; Gov't Sent'g Mem. at 2.

### *Procedural History*

FBI agents arrested Defendant at Newark Liberty International Airport on October 1, 2023, while she attempted to board an international flight to Colombia. PSR at ¶ 26; Gov't Sent'g Mem. at 2. She was initially charged by complaint with entry into the secure area of an airport by false pretenses, in violation of 18 U.S.C. § 1036(a)(4). Gov't Sent'g Mem. at 2; Complaint, ECF No. 1. Defendant was charged via first and second superseding indictment, on November 3, 2023, and November 17, 2023, respectively. First Superseding Indictment, ECF No. 10; Second Superseding Indictment, ECF No. 11. The first superseding indictment added charges against Defendant, and the second superseding indictment added co-defendants. *See* First Superseding Indictment; Second Superseding Indictment.

The third superseding indictment (the "Indictment") asserted four counts: Count One against Defendant, Ducuara, Polo, and Angel Betancur-Lopez alleged conspiracy to commit interstate transportation of stolen property contrary to 18 U.S.C. § 2314, in violation of 18 U.S.C. § 371; Count Two against Polo alleged entry to a secure area by false pretenses, in violation of 18 U.S.C. § 1036(a)(4); Count Three against Defendant alleged entry to a secure area by false pretenses, in violation of 18 U.S.C. § 1036(a)(4); and Count Four against Defendant alleged interstate transportation of stolen property, in violation of 18 U.S.C. § 2314. Indictment, ECF No. 24 at ¶¶ 1–5. The Indictment also asserted criminal forfeiture allegations pertaining to Counts One and Four. *Id.* at ¶¶ 6–9.

On August 16, 2024, Defendant pled guilty to Count One of the Indictment, charging her with conspiracy to engage in the interstate transportation of stolen property from June 2022 through October 2023, in violation of 18 U.S.C. § 371. Plea Agreement at ¶ 1. Pursuant to the Plea, Defendant agreed not to file an appeal or otherwise challenge her sentence if the Court imposes a term of 60 months' imprisonment or below. *Id.* at ¶ 4. The Government agreed "no further criminal charges will be brought against the defendant for engaging in the interstate transportation of stolen property between June 2022 and October 2023, and conspiring to do so, and entering the secure area of an airport on March 15, 2023[.]" *Id.* at ¶ 5. Additionally, the Government agreed to move to dismiss the remaining counts of the Indictment with prejudice as to Defendant at the time of sentencing. *Id.*

On October 1, 2024, Polo pled guilty to Count One of the Indictment. Polo Plea Agreement, ECF No. 70 at ¶ 1. He is scheduled to be sentenced on February 11, 2026. Scheduling Order, ECF No. 120.

On October 5, 2024, Ducuara pled guilty to Count One of the Indictment and Count One of an indictment pending against him in the Southern District of New York, *United States v. Carlos Alberto Manrique Ducuara*, 23-CR-432 (S.D.N.Y.). Sealed Ducuara Plea Agreement, ECF No. 78 at ¶ 1. Ducuara is not yet scheduled for sentencing.

On May 9, 2025, Betancur-Lopez pled guilty to Count One of the Indictment. Betancur-Lopez Plea Agreement, ECF No. 96 at ¶ 1. His sentencing is scheduled for February 20, 2026. Scheduling Order, ECF No. 123.

## II.    Legal Standard

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C.§ 3553. Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines

(the "Sentencing Guidelines," or "Guidelines," or "U.S.S.G.") operate as the "starting point and . . . initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a trial court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor in turn.

## III.    Analysis

### A.  The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

*1.    Family and Personal Background*

Defendant was born on September 17, 1984, in Bogota, Colombia.  PSR at ¶ 62.

Defendant is one of two children born to her parents.  *Id.* at ¶ 63.  Defendant's 43-year-old

brother, Christian, struggles with drug addiction.  *Id.*  She has not had contact with him since

approximately 2021.  *Id.*  Defendant also has three maternal siblings, all of whom are in their

fifties and healthy, residing in Colombia.  *Id.*  One of her maternal siblings, Libardo, is angry

about her involvement in the instant case.  *Id.*  Defendant has four paternal siblings, ranging in

age from nineteen to thirty-three.  *Id.*  Two of these siblings reside in New York, and the other

two reside in Colombia.  *Id.*  With the exception of her brothers Christian and Libardo,

Defendant has a close relationship with her siblings, with whom she communicates daily and

who remain supportive of her.  *Id.*

Defendant was raised by her parents in a middle-income household in Colombia.  *Id.* at

¶ 64.  She described her upbringing as "dysfunctional" because her parents had a tumultuous

relationship due to her father's extramarital affairs and the abuse—both physical and verbal—he

inflicted on Defendant's mother.  *Id.*  Defendant's father was also often away for work.  *Id.*

Amidst her father's abuse, Defendant's brother Christian began using drugs and physically

abusing Defendant.  *Id.*  Defendant was physically abused by Christian from ages thirteen to

seventeen.  *Id.*  Defendant is also a victim of sexual abuse.  She was groped by her uncle at her

paternal aunt's funeral when she was fourteen years old.  *Id.*  Defendant left home at age

seventeen to live with her older sister.  *Id.*

In 2002, Defendant began a relationship with Carlos Ernest Castellanos ("Castellanos").

*Id.* at ¶ 65.  They had a daughter named Mariana Castellanos Quintero.  *Id.*  Their relationship

ended in 2006 due to Castellanos' drug addiction and absence as a parent to Mariana.  *Id.*

Defendant reports she has not spoken to Castellanos for many years. *Id.* Castellanos is forty-two years old and presently resides in Colombia. *Id.*

In 2010, Defendant entered into a romantic relationship with Jorge Alberto Ramirez ("Ramirez"). *Id.* at ¶ 66. They had a daughter named Sophya Ramirez Quintero.[5] *Id.* Defendant's relationship with Ramirez ended in 2021 because he physically abused her. *Id.* Ramirez is forty-three years old and presently resides in Colombia. *Id.*

Defendant's two daughters, Mariana and Sophya, now nineteen and thirteen years old respectively, reside in Colombia. *Id.* at ¶¶ 65–66. Since Defendant's arrest and her mother's passing, Mariana has dropped out of school to serve as Sophya's sole caretaker. *Id.* at ¶ 65. Defendant speaks with Mariana daily, and Mariana is aware of the instant offense and remains supportive of her mother. *Id.* In the absence of her mother and grandmother, Sophya has struggled with her mental health and experienced suicidal thoughts. *Id.* at ¶ 66. Sophya is currently in therapy and speaks with Defendant daily. *Id.* Sophya is aware of the instant case and remains supportive of her mother. *Id.* Both Sophya and Mariana submitted letters requesting leniency on Defendant's behalf. Defs. Sent'g Mem., Ex. A, at 5–7.

Defendant's father resides in Colombia. PSR at ¶ 62. He suffers from an unknown respiratory illness. *Id.* Defendant has a good relationship with her father, with whom she communicates weekly. *Id.* Her father is aware of Defendant's involvement in the instant offense and remains supportive of her. *Id.* Defendant's father submitted a letter requesting leniency on Defendants behalf. Defs. Sent'g Mem., Ex. A, at 2.

---

[5] The PSR refers to Defendant's youngest daughter as "Sofia." PSR at ¶ 66. Based on Defendant's Sentencing Memorandum, the proper spelling is "Sophya." *See* Defendant's Sentencing Memorandum ("Defs. Sent'g Mem."), ECF No. 115, at 4; Ex. A at 7 (letter from Sophya).

Family members and friends have also written letters in support of Defendant, including her nephews Esteban, Samel, and Simon, her sister Nubia, her niece Isabella, and inmates from her unit at the MDC. *See* Defs. Sent'g Mem., Ex. A. One of Defendant's friends described Defendant as a dedicated mother. PSR at ¶ 67.

Defendant resided in Bogota, Colombia, with her family until she obtained a tourist visa to visit the United States in 2013. *Id.* at ¶ 68. After visiting for three months, Defendant returned to Colombia. *Id.* Defendant entered the United States again in March 2021 on a temporary visa and settled in New York. *Id.* at ¶¶ 68, 70. Her temporary visa expired on February 19, 2023. *Id.* at ¶ 70. Because she overstayed her temporary visa, an ICE detainer has been lodged against her. *Id.*

### 2. *Educational and Employment History*

In 2001, Defendant received her high school diploma from National College Externado Camilo Torres in Bogota, Colombia. *Id.* at ¶ 79. Defendant indicated she earned good grades and was never subject to discipline at school. *Id.* After graduation, she attended Corporacion Unificada Nacional Torres in Bogota, Colombia, from 2002 to 2004, where she pursued an associate degree in graphic design. *Id.* at ¶ 78. Defendant withdrew from school prior to completion because she could no longer afford the courses. *Id.* In 2016, Defendant graduated from an unidentified beauty school in Colombia. *Id.* at ¶ 77.

From 2003 until her arrest related to the instant case on October 1, 2023, Defendant financially supported herself and her daughters by intermittently selling clothes and food throughout Colombia. *Id.* at ¶ 81. She also briefly worked at a concession stand in a theater in Bogota from 2007 until 2008. *Id.*

Defendant reported having no assets and no monthly income or expenses. *Id.* at ¶ 83. Defendant appears unable to pay a fine. *Id.* at ¶ 86.

        *3.*        <u>*Prior Convictions*</u>

Defendant does not have any prior juvenile adjudications or adult criminal convictions. *Id.* at ¶¶ 51–55.

        *4.*        <u>*Physical and Mental Health*</u>

In June 2024, Defendant underwent a Papanicolaou test for lesions that MDC medical staff found on her cervix. *Id.* at ¶ 72. Defendant's results were negative for cancerous or pre-cancerous cells, but she has continued experiencing pelvic pain while incarcerated. *Id.* Defendant also reported headaches caused by a need for corrective eyeglasses. *Id.*

  In her presentence interview, Defendant reported she experienced suicidal ideation at seventeen years old due to the physical abuse she endured from her brother and having to leave her familial home to live with her sister. *Id.* at ¶ 74. Her suicidal ideation has since ceased, and she denied any history of suicide attempts or gambling addiction. *Id.* at ¶¶ 74, 75. While incarcerated at MDC, Defendant saw a therapist on one occasion after her mother passed away. *Id.* at ¶ 73. She was also advised to exercise and change her diet. *Id.* Defendant has no other history of mental or emotional health conditions. *Id.* at ¶ 75.

        *5.*        <u>*Substance Abuse*</u>

Defendant first consumed alcohol as a teenager. *Id.* at ¶ 76. She has not had an alcoholic beverage since prior to her arrest in 2023. *Id.* Defendant has never used illicit drugs or misused controlled substances. *Id.*

6.    *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's conduct. Defendant engaged in sophisticated, coordinated efforts across the United States to steal items of significant value. Defendant was successful in these endeavors, as she participated in at least seven thefts and two attempted thefts totaling over $5.2 million in losses to the victims. The Court's sentence will deter Defendant and others from engaging in similar conduct, justly punish Defendant for her crimes, and protect the public from Defendant's actions. Accordingly, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a)(2).

**C. The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to one count of conspiracy to commit interstate transportation of stolen property in violation of 18 U.S.C. § 371. Plea at ¶ 1.

Defendant faces a maximum term of five years' imprisonment and no minimum term. 18

U.S.C. § 371. Defendant also faces a maximum term of three years of supervised release. 18

U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to

one year of imprisonment without credit for pre-release imprisonment or time previously served

on post-release supervision. 18 U.S.C. § 3583(e). Defendant is eligible for a term of probation

of one to five years. 18 U.S.C. § 3561(c)(1). Unless extraordinary circumstances exist, the

Court must impose one of the following as a condition of probation: a fine, restitution, or period

of community service. 18 U.S.C. § 3563(a)(2).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to consider "the kinds of sentence and the

sentencing range established for . . . [t]he applicable category of offense committed by the

applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

Defendant pled guilty to one count of conspiracy to commit interstate transportation of

stolen property contrary to 18 U.S.C. § 2314, in violation of 18 U.S.C. § 371. Plea at ¶ 1.

The parties agree as to the applicable Guideline provisions in this case. All parties agree

the applicable guideline is U.S.S.G. § 2X1.1, which directs the Court by way of cross reference

to the "base offense level for the substantive offense." Here, the base offense level for the

substantive office—interstate transportation of stolen property—is found in U.S.S.G. § 2B1.1,

which covers, *inter alia*, forms of theft. U.S.S.G. § 2X1.1(a); *see* Am. PSR at ¶ 38; Gov't Sent'g

Mem. at 3; Defs. Sent'g Mem. at 2 (referencing Guidelines agreed upon in the Plea); Plea at ¶ 2.

Under U.S.S.G. § 2B1.1(a)(2), Defendant has a Base Offense Level of 6.

The parties also agree certain adjustments should apply to Defendant. First, U.S.S.G. §

2B1.1(b)(1)(J) adds 18 levels because the total loss stemming from the offense—based on the

Government's estimates and Defendant's plea agreement—was greater than $3,500,000.00, but less than $9,500,000.00. U.S.S.G. § 2B1.1(b)(1)(J); *see* Am. PSR at ¶ 39; Gov't Sent'g Mem. at 3; Defs. Sent'g Mem. at 1.[6]

Second, U.S.S.G. § 2B1.1(b)(3) adds 2 levels because the offense involved a theft from the person of another. *See* Am. PSR at ¶ 41; Gov't Sent'g Mem. at 3; Plea at ¶ 2.

Third, U.S.S.G. § 2B1.1(b)(10)(C) adds 2 levels because the offense involved sophisticated means. *See* Am. PSR at ¶ 42; Gov't Sent'g Mem. at 3; Plea at ¶ 2.

The parties agree a 3-level reduction should apply for Defendant's timely acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b). *See* Am. PSR at ¶¶ 47–48; Gov't Sent'g Mem. at 3; Plea at ¶ 2.

The parties also agree a 2-level reduction should apply because Defendant is a Zero-Point Offender as defined under U.S.S.G. §§ 4C1.1(a)(1)–(11). *See* Am. PSR at ¶ 49; Gov't Sent'g Mem. at 3; Defs. Sent'g Mem. at 9 (noting Defendant's lack of a criminal history); Plea at ¶ 3.[7]

---

[6] The parties differed on the exact amount of loss pertaining to Defendant's conduct. Defendant objected to the PSR's inclusion of $229,000 in losses stemming from the theft on October 26, 2022 in New York, New York in her total loss amount. Defs. Obj. to PSR at 1. The Government conceded there was "no evidence to support that the defendant [was] involved in the theft" and Probation, accordingly, deleted $229,000 from the loss-amount chart in the PSR. Am. PSR at 1–2. Probation calculated the new total loss-amount to be $5,220,578.00. *Id.* at 2. The Government stated this was an error and the loss amount attributed to Defendant instead adds up to $5,270,578.00. Gov't Sent'g Mem. at 1 fn. 1. In any event, the Government acknowledges this difference does not impact the Guideline range. *Id.*

[7] Pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i), the original PSR included a 2-level sentencing enhancement for an offense that involved ten (10) or more victims. PSR at ¶ 40. Defendant objected, noting she was not involved in the attempted theft on July 8, 2022 in Tampa, Florida, the attempted theft on August 7, 2022 in Tampa, Florida, and the theft on October 26, 2022 in New York, New York. Defs. Obj. to PSR at 1; PSR at ¶ 7, 8, 12. According to Defendant, this left only nine (9) "identifiable" victims, so the 2-level enhancement for ten victims should not apply. Defs. Obj. to PSR at 1. The Government and Probation conceded there were less than ten victims and therefore a § 2B1.1(b)(2)(A)(i) enhancement should not apply. Am. PSR at 2.

Defendant's Criminal History Category is I because she has no history of convictions or sentences. U.S.S.G. § 4A1.1; *see* PSR at ¶ 53; Gov't Sent'g Mem. at 4; Def. Obj. to PSR at 1.

Pursuant to the Guidelines Sentencing Table, a Total Adjusted Offense Level of 23 and a Criminal History Category of I results in a Guidelines range of forty-six (46) to fifty-seven (57) months' imprisonment. U.S.S.G. § 5A. This sentence is subject to a statutory maximum of five (5) years. U.S.S.G. § 5G1.1(a); 18 U.S.C. § 371.

Probation recommends a sentence of forty-six (46) months' imprisonment; followed by two (2) years of supervised release with four (4) special conditions; restitution to be determined by the Court; and a $100.00 mandatory special assessment. Probation Sent'g Recommendation at 1. The Government recommends a sentence within the Guidelines range, forty-six (46) to fifty-seven (57) months. Gov't Sent'g Mem. at 1. Defense counsel recommends a sentence of time served. Defs. Sent'g Mem. at 1. This Court appreciates the sentencing arguments raised by all parties and seriously considered each in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). The parties have not drawn the Court's attention to any applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

15

Defendants raise disparities for defendants sentenced under U.S.S.G. § 2B1.1, arguing the "prevailing view among federal district courts that first-time offenders who commit economic crimes do not require a guidelines sentence." Defs. Sent'g Mem. at 2. Citing to data from the United State Sentencing Commission, Defendant notes "sentences are infrequently imposed in cases like [Defendant's] where the defendant is sentenced under § 2B1.1 and has a criminal history category of I." *See id.* at 8; Def. Sent'g Mem., Exs. D, E, J. Defendant argues, "locally and nationally[,]" sentences under 2B1.1 are "excessive" for individuals like Defendant. Def. Sent'g Mem. at 9.

The Court has reviewed and considered carefully Defendant's arguments and data relating to sentencing disparities. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

Pursuant to the Plea, Defendant agreed to a Restitution Order in the amount of $5,289,578.00, consistent with 18 U.S.C. §§ 3663, 3663A and 3664. Plea at ¶ 1. The Government indicated it has provided the Probation Department with contact information for the identified victims, and affidavits of loss were forwarded to the victims. PSR at ¶ 97. As of the time of sentencing, no responses have been received from the victims. Am. PSR at ¶ 97. The Court reserves its right, pursuant to 18 U.S.C. § 3664(d)(5), to hold an evidentiary hearing within ninety (90) days after this sentencing to determine the specific amounts owed to Defendant's victims. The Court will issue a Final Order of Restitution accordingly.

## IV.    Conclusion

For the reasons set forth above, the Court sentences Defendant forty-six (46) months' imprisonment; two (2) years of supervised release with both the standard and special conditions of supervision; restitution in the amount of $5,289,578.00, plus interest, as set forth in the forthcoming Order of Restitution; forfeiture of items identified in the Order of Forfeiture, ECF No. 62; and a $100.00 mandatory special assessment. This sentence is sufficient, but not greater than necessary, to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's present financial circumstances.

The Court expressly adopts the factual findings of the Sealed Presentence Investigation Report and Addenda thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion. The Court advises the Defendant she has fourteen (14) days to appeal the order and judgment of this court from the date the order and judgment are entered.

**SO ORDERED.**

**s/WFK**

HON. WILLIAM F. KUNTZ, II

UNITED STATES DISTRICT JUDGE

Dated: February 2, 2026
        Brooklyn, New York

17